IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-20143-01-JWL |
| | ) | |
| KENNETH A. RAYFORD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the court on the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 239).  For the reasons set forth below, the court **grants** the motion.  The court reduces the defendant's sentence to time served and imposes a special term of supervised release until October 23, 2021 with the additional restriction that the special term of supervised release shall include home confinement.[1]  At the end of the special term of supervised release, the defendant will begin serving his previously imposed term of supervised release.

### I.    **Procedural History**

On June 21, 2010, the defendant Kenneth Rayford pled guilty to one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a); one count of carrying and

---

[1] The United States Probation Office has reviewed and approved defendant's home plan.

using a firearm during and in relation to the attempted bank robbery, in violation of 18 U.S.C. § 924(c); and two counts of aggravated bank robbery, in violation of 18 U.S.C. § 2113(a), (d).  He was sentenced to concurrent 108–month terms of imprisonment on the bank robbery counts and a consecutive 60–month term on the firearm count, for a total of 168 months imprisonment.  His sentence was affirmed on appeal. *United States v. Rayford*, 466 Fed. Appx. 687 (10th Cir. 2011).  He is incarcerated at FCI Forrest City Low, and his present projected release date is October 23, 2021.

## II.  <u>Analysis</u>

The defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A).  That statute allows a defendant to bring a motion for reduction of a term of imprisonment "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *See id.* The government concedes that the defendant has exhausted his administrative remedies such that the court has jurisdiction to consider the motion on its merits.

The moving defendant bears the burden of establishing that "compassionate release" is warranted under Section 3582(c)(1)(A), and a court exercises its discretion in ruling on such a motion.  *See United States v. Jackson*, 2020 WL 2812764, at \*2 (D. Kan. May 29, 2020) (Lungstrum, J.) (citing cases).

Section 3582(c)(1)(A) provides that a court may reduce a sentence if it finds, after considering applicable factors from Section 3553(a), that (a) extraordinary and compelling

reasons warrant the reduction and (b) the reduction is consistent with the applicable policy statement issued by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A). To address this statutory provision, the Sentencing Commission promulgated the policy statement found at U.S.S.G. § 1B1.13, which adds the requirement that the defendant not be a danger to the safety of another person or the community. *See id.* In addition, in Application Note 1 to the statement, the Commission set forth four circumstances (in subdivisions (A) through (D)) under which "extraordinary and compelling reasons" may exist. *See id.* applic. note 1. In this case, the court looks to subdivision (D), known as the "catchall" provision, which provides as follows:

> **(D)  Other Reasons. –** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*See id.* Subdivision (D) thus provides that circumstances other than those listed in subdivisions (A) through (C) may be sufficient to warrant relief, as determined by the Bureau of Prisons (BOP). The BOP has made no such determination in this case. Nevertheless, as this court has previously determined, in accordance with the weight of authority, the court is not limited to circumstances (A) through (C), and it may exercise its own discretion to determine whether other extraordinary and compelling reasons warrant relief under the statute. *See Jackson*, 2020 WL 2812764, at *3.

The defendant argues that extraordinary and compelling reasons for immediate release from prison exist because his age (69 years old), medical conditions (Type 2 diabetes, hypertension, and congestive heart failure) and the conditions of his confinement

create an increased risk of serious harm or death from the ongoing coronavirus pandemic. The government concedes that the defendant's age and medical conditions combined constitute extraordinary and compelling reasons sufficient for this court to consider early release under the statute. Nonetheless, the government opposes the motion on the grounds that the § 3553(a) factors weigh against early release in light of the nature and seriousness of the defendant's offenses and to provide just punishment for those offenses. As highlighted by the defendant in his reply, then, the sole question before the court is whether the § 3553(a) factors outweigh the risks to the defendant's health if he remains incarcerated for the 16 months remaining on his sentence.

The court concludes in its discretion, for the reasons set forth below, that the § 3553(a) factors weigh in favor of early release when measured against the risk to the defendant's health if he remains in custody. Without question, the defendant's underlying health conditions place him at a higher risk with respect to the COVID-19 coronavirus. Defendant is 69 years of age. The government does not dispute that defendant has diabetes and hypertension.[2] The CDC lists Type 2 diabetes as a condition that increases the risk of severe illness from COVID-19. *See* CDC, *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 28, 2020). And in its most recent guidance, the CDC added hypertension to its list of conditions that may increase an individual's risk of severe illness from COVID-19. *See id.*

---

[2] The government notes that the defendant's medical records suggest that his congestive heart failure is in remission.

Additionally, in multiple studies of patients with COVID-19, most patients who died had at least one comorbidity. *See United States v. Pullen*, 2020 WL 4049899, at *5 (D. Kan. July 20, 2020).  Among the comorbidities, hypertension appeared frequently, indicating a strong relationship between hypertension and a patient's likelihood of developing a severe illness from COVID-19.  *See id.* (citing JAMA Internal Medicine, *Risk Factors Associated with Acute Respiratory Distress Syndrome and Death in Patients with Coronavirus Disease 2019 Pnuemonia in Wuhan, China*, https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2763184 (Mar. 13, 2020) (in a study of 201 infected patients, 84 developed acute respiratory distress syndrome (ARDS), and of those 84 with ARDS, 23 had hypertension compared to just 16 of 117 with hypertension who did not develop ARDS); The Lancet, *Are Patients with Hypertension and Diabetes Mullitus at Increased Risk for COVID-19 Infection?*, https://www.thelancet.com/journals/lanres/article/PIIS-2600(20)30116-8/fulltext (Mar. 11, 2020) (concluding that the most frequent comorbidities of patients with COVID-19 were diabetes, hypertension, and cerebrovascular disease)).

In addition to his underlying health conditions, defendant's risk is increased by the fact that he is presently incarcerated at Forrest City Low, where more than one-third of the prison population has been infected by COVID-19.  The BOP's website shows that 29 inmates have active cases of COVID-19 and 2 staff members have active cases.  This outbreak suggests that the BOP's preventative measures have not been successful at the facility, where social distancing among inmates is simply not possible.  Thus, the combination of defendant's age, his underlying health conditions, which increase his risk

of serious harm from the virus, and the outbreak at the facility, where it appears that measures to contain the virus have been ineffective, provides an extraordinary and compelling reason for relief in this case, as the government clearly recognizes in its response.

The policy statement in Guideline Section 1B1.13 requires that defendant not be a danger to the safety of another person or the community, and the court finds that this requirement is satisfied in this case.  As the defendant highlights, data supports the conclusion that the defendant's risk of recidivism is slim in light of his age.  The government concedes as much in its response.  ("[T]he defendant's age may rule out any continued dangerousness.").  The court also notes that defendant is presently in a low-security facility.

Finally, the applicable Section 3553(a) factors do not compel a contrary conclusion and weigh in favor of early release to home confinement.  Those factors are: (1) the nature of the offense and the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable Guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants. 18 U.S.C. § 3553(a)(1)-(6).  To be sure, the nature of the defendant's offenses is serious but the seriousness of those offenses was reflected in the sentence that he received and will complete in home confinement.  The defendant's incarceration for a period of approximately 129 months, together with a term of home

confinement, is sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation.

In summary, the court concludes in its discretion that extraordinary and compelling reasons warrant the reduction of the defendant's sentence to time served pursuant to Section 3582(c)(1)(A), and the defendant's motion is hereby granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 239) is hereby **granted**. The court reduces defendant's sentence to time served.

**IT IS FURTHER ORDERED BY THE COURT THAT** imposes a special term of supervised release until October 23, 2021 with the additional restriction that the special term of supervised release shall include home confinement. During this time, defendant shall remain at his place of residence except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the U.S. Probation Officer. Defendant shall be required to wear a location monitoring device, which will include Radio Frequency, Global Positioning System and/or Random Tracking at the discretion of the probation officer, and defendant shall abide by all technology requirements. Defendant shall follow all location monitoring procedures specified by the probation officer, and defendant must contribute toward the cost, to the extent that he is financially able to do so, as directed by the Court or the probation officer. At the end of the special term of

supervised release, the defendant will begin serving his previously imposed term of supervised release.  All previously imposed terms and conditions of defendant's supervised release remain in effect.

**IT IS SO ORDERED.**

Dated this 28th  day of July, 2020, in Kansas City, Kansas.

_s/ John W. Lungstrum_
John W. Lungstrum
United States District Judge
